PENNSYLVANIA CENTRAL RAIL-
ROAD COMPANY, Plaintiff,

v.

RISS & COMPANY, Defendant.

Civ. A. No. 17729-3.

United States District Court,
W. D. Missouri, W. D.

Nov. 12, 1970.

———◆———

Bruce C. Houdek, James & McCanse, Kansas City, Mo., for plaintiff.

Rodger J. Walsh, Kansas City, Mo., for defendant.

DECLARATORY JUDGMENT BINDING PARTIES TO ABIDE BY DECISION OF INTERSTATE COMMERCE COMMISSION AND RETAINING JURISDICTION FOR POSSIBLE MOTION FOR CONVENTIONAL RELIEF IN ACCORDANCE WITH THAT DECISION

WILLIAM H. BECKER, Chief Judge.

This is an action, according to the allegations of the complaint herein, under the provisions of Section 1337, Title 28, United States Code, by the plaintiff railroad to collect "storage and detention charges in the amount of One Thousand Eight Hundred Forty-Eight Dollars" allegedly incurred by defendant "[o]n various dates between on or about September 15, 1966, to and including February 1, 1969." In the complaint, plaintiff alleges that the charges are made under the correct tariff and that the tariff is "on file with [the] Interstate Commerce Commission." Defendant generally denies these allegations as it does the other allegations of the complaint.

 Under the doctrine of United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126, the construction of the applicable tariff is in the "primary jurisdiction" of the Interstate Commerce Commission. Cf. Anno. 1 L.Ed.2d 1596. In this Court, in cases wherein the applicable statute of limitations may run while any complaint pends before the Commission, it has been held that a final declaratory judgment providing that the parties will abide by the judgment of the Commission and that jurisdiction is retained for a possible motion for conventional relief in accordance with the decision of the Interstate Commerce Commission is proper. Therefore, the Court entered an order on June 30, 1970, directing plaintiff to show cause why this cause should not be the subject of such a final judgment and order.

Plaintiff's initial response was filed on July 10, 1970. Therein plaintiff stated that "it is the understanding of plaintiff's counsel that the real dispute between the parties is whether or not there was an independent agreement exclusive of the tariff between plaintiff and defendant that the charges so applicable would not be billed to defendant for shipments to Philadelphia, Pennsylvania" and that "no questions concerning construction or reasonableness of the tariff are presented and the matter to be tried does not fall within the expertise of the Interstate Commerce Commission."

Defendant then filed its traverse to plaintiff's response on August 3, 1970. Therein, defendant contended that the doctrine of "primary jurisdiction" of the Interstate Commerce Commission was not applicable; that "defendant denies that there is 'on file with [the] Interstate Commerce Commission' any tariff in connection with the charges between the plaintiff railroad and the defendant motor carrier"; that "[t]here is on file with the Interstate Commerce Commission a tariff applicable to the defendant motor carrier for the transportation charges that it bills the shipper but this tariff has nothing to do with the charges that the plaintiff railroad levies against the defendant motor carrier for the substituted service rendered by the plaintiff railroad to the defendant motor carrier"; "[t]hat the Interstate Commerce Commission may have jurisdiction to establish such tariff * * * but * * * the Interstate Commerce Commission had not published a tariff applicable in this case, that is, charges by a railroad to a motor carrier for substituted service"; that "[i]n this case 'piggy-back' service is the same as 'substituted service' "; that "[i]t is the contention of the defendant in this case that the relationship between the plaintiff railroad and the defendant motor carrier was a contractual obligation, not a tariff, and that under the terms of the agreement there were to be no detention charges made against the defendant motor carrier"; that "plaintiff's contention that there is a tariff involved is erroneous"; that "[i]f a tariff was involved then the plaintiff should produce it or

refer to it in its pleadings or orders but there is no tariff involved in this controversy"; and that therefore "it is the contention of the defendant that this court has jurisdiction to determine the contract rights of the parties under the Carmack Amendment, 49 U.S.C. section 20 part 11" pertaining to damages sustained by a shipper over railroad lines.

Defendant had also undertaken to file, on August 3, 1970, without leave of Court, and without requesting leave of Court, a counterclaim consisting of "an itemized list of damage claims against the plaintiff in the amount of $9,943.37 in trailer damage claims * * * [and] cargo loss and damage claims in the amount of $32,674.51." Because the counterclaim was filed more than 20 days after service of the original answer and because leave of Court was not requested as required by Rule 15(a), F.R. Civ.P., the counterclaim was stricken by the order entered herein on August 17, 1970.

In order, therefore, to determine the question of whether the doctrine of "primary jurisdiction" of the Interstate Commerce Commission is applicable to the case at bar, it was necessary that the text of the tariff which plaintiff contended to be applicable be made known to the Court. To this end, on August 17, 1970, the Court ordered plaintiff to file a supplemental response within seven days in which it cited in full text "the tariff on file with the ICC" which it deemed applicable to this case.

In its response filed on August 24, 1970, plaintiff appended Pennsylvania Central Railroad Tariffs numbered "P.R.R. division Basis 9599–I, Item 40"; "Supplement 6 to P.C.P. Divisional Basis 9599–I, Item 40A" and "Supplement 8 to P.C.P. Division Basis 9599–I, Item 40B."

Item 40 of the P.R.R. Divisional Basis 9599–I purports to impose detention charges for trailers not picked up by a motor carrier at the expiration of free time and reads as follows:

"A storage charge of Z $5.00 will be assessed for each day or part of a day that a trailer is not picked up by a Motor Carrier after the expiration of free time at rail destination. For a trailer unloaded from the rail car prior to 10:00 a. m., such free time expires at 11:59 p. m. the same day, Saturday, Sunday or Federal, State or Municipal holidays in effect at the rail destination excepted, and for those unloaded after 10:00 a. m. on any day, free time will expire at 11:59 p. m. on the following day which is other than a Saturday, Sunday or Federal, State or Municipal holiday in effect at the rail destination."

Item 40A of Supplement 6 purports to impose a rate of $5.30 for each day and to supplant Item 40, *supra* as of July 30, 1968, effective August 1, 1968, and Item 130A purports to impose charges for delivering trailers:

* * * "upon request of motor carrier party hereto * * * to motor carrier or its connecting motor carrier on railroad flat cars in care of the following railroads at Chicago; CNW Ry., PI RR for further movement in trailer on flat car service via the above named railroads, when motor carrier tenders trailers consigned to a single destination on same railroad. The charge to motor carrier party hereto for this additional service will be $8.24 per trailer."

Items 40B and 130B of Supplement 8 purport to raise the rates for the two services as of January 2, 1969, to $5.46 per day and $8.48 per trailer, respectively.

The tariffs thus purport to cover the services allegedly rendered defendant by plaintiff herein. Plaintiff stated that these tariffs "cover the period September 1, 1967 to date"; that "[p]laintiff's counsel has requested copies of the applicable tariff for the period September 15, 1966, to September 1, 1967, from plaintiff's general counsel but has not yet received the same"; that "[i]t was the understanding of counsel for plaintiff when this action was initiated that the tariffs attached hereto as exhibits were in fact on file with the Interstate

Commerce Commission"; that "[w]hen defendant filed its traverse to plaintiff's response to the Court's show cause order, plaintiff's counsel made immediate inquiry from plaintiff's general counsel concerning the allegations contained therein"; that "[n]o response to that inquiry has yet been received"; and that "[p]laintiff's counsel has been assured of a response to his inquiries within the next few days and when that information is received will request leave of Court for the filing of an addendum to this supplemental response."

Subsequently, in a supplemental response, plaintiff stated that the above and foregoing tariffs were not on file with the Interstate Commerce Commission; that the rates which are applicable to this case are made so by a private agreement between plaintiff and defendant which is authorized by a tariff or other provision of the Interstate Commerce Commission.

On October 13, 1970, plaintiff filed a copy of the tariff which governs defendant's collection of rates and fares from its shippers. Item 10 thereof applies to substitution of rail carrier service and reads as follows:

"SUBSTITUTION OF SERVICE

"(A) Unless the shipper directs that the rail carrier service shall not be performed the motor carriers parties hereto may, at their option, substitute rail service between the points and via the rail carriers shown herein, for their actually available service via highways for which such motor carriers have lawful operating rights as common carriers via motor vehicle.

"(B) When substitution service is performed under provisions of this tariff in connection with rates published in tariffs making specific reference hereto, the rates named in said tariffs will apply in connection with the carriers named in this tariff."

According to the construction placed on it by plaintiff, this tariff "provides that the shipper shall be charged the same rate by the motor carrier for the substi-

tuted rail service as is otherwise charged for the highway motor service"; and that "[d]efendant's counsel has advised that in the instances where it substituted rail service on plaintiff's lines, it had on file with the Interstate Commerce Commission appropriate tariffs for motor carriers between the points in question and had lawful operating rights as a common carrier between those points [as] is required by Item 10(a) of Exhibit 7." Defendant has not undertaken to supply any of these tariffs in response to the order of this Court entered on October 7, 1970, directing the parties further to show cause why the doctrine of primary jurisdiction should not be invoked "by filing the tariff or other provision of the ICC which allows the applicable rates in this case to be made by agreement of the parties."

It has been the contention of the parties that the above tariff is the only one applicable; that it says nothing of how the rate collected under Item 10(A), *supra*, is to be divided between plaintiff and defendant; that the parties are therefore free to contract respecting the divisional basis of the collected rate; and therefore that the issues in this suit are whether the contract relied on by plaintiff is a genuine contract and whether it requires collection of the amount demanded in the complaint herein.

But the issue in this case is whether the plaintiff is making appropriate charges for storage. Plaintiff, in its response filed October 13, 1970, states that "[t]he charges which form a basis for plaintiff's claim are exclusively those for storage under Item 40 of the divisional bases and no claim is made for delivery charges under Item 130A." In respect to this issue, it is the unremitting requirement of Section 6(1), (7) and (9) of Title 49, U.S.C., that any charges made for this service be made under tariffs on file with the Commission or not be made at all. It is clear that Item 10(A), *supra*, regulating rates charged by defendant to its shippers, has no apparent relation to storage

charges made by plaintiff to defendant. If, as the parties contend, Item 10(A) entitles them to establish storage charges by independent contract rather than by tariffs filed in accordance with § 6, Title 49, U.S.C., the construction of the tariff is not one which can be readily made under the usual rules of judicial construction. The construction of this tariff has thus not been clearly shown not to involve the expertise of the Interstate Commerce Commission. Plaintiff rather argues that Section 6 of Title 49, U.S.C., should be ignored by the Court because "Defendant does not contend that the contract * * * nor the divisional bases violate Title 49 United States Code § 6(1) (9)." But the parties cannot waive "primary jurisdiction" of the ICC by their agreement. The referred-to section clearly provides that tariffs which are not on file with the ICC are null and void and not enforceable by the carrier. Under the Interstate Commerce Act, courts do not have the power to establish rates. Humble Oil & Refining Co. v. Great Northern Ry. Co. (D.Mont.) 212 F.Supp. 747. Defendant's argument that "primary jurisdiction" of the ICC does not attach because the ICC has not published an applicable tariff is equally spurious. As the Eighth Circuit Court of Appeals recently stated in Middlewest Motor Freight Bureau v. United States (C.A. 8) 433 F.2d 212, the Commission does not make rates; it rather adjudicates their lawfulness. Carriers are under the obligation to make lawful tariffs and file them with the Interstate Commerce Commission. Item 40 containing the rate sought to be collected by plaintiff for storage charges is admittedly not on file with the Interstate Commerce Commission. Unless Item 10(A), *supra*, can be construed to make Item 40 effective without such filing, as it cannot be under ordinary rules of judicial construction, then plaintiff's complaint should be dismissed. It is only in liberally viewing the parties' contentions that Item 10(A) does indeed permit plaintiff to make storage charges without having an appropriate tariff on file with the Interstate Commerce Commission that this Court has concluded that, construed in the light of the expertise of the Interstate Commerce Commission, Item 10(A) may dictate this result. Apart from such expertise, certainly, no such construction can exist. The doctrine of "primary jurisdiction" of the Interstate Commerce Commission should thus be invoked as the alternative to dismissing plaintiff's complaint. This is consonant with the rule of Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Great Atlantic & Pacific Tea Co. v. Amalgamated Meat Cutters & Butcher Workmen of North America (C.A. 8) 410 F.2d 650; and Leimer v. State Mut. Life Assur. Co. (C.A. 8) 108 F.2d 302, that the allegations of the complaint must be viewed in the light most favorable to plaintiff. Primary jurisdiction of the Interstate Commerce Commission extends to questions of construction, application and enforceability of tariffs when such questions involve the expertise of the Commission. United States v. Western Pacific Railroad Co., *supra*; United States v. Great Northern Ry. Co. (C.A. 8) 337 F.2d 243.

Meantime, this cause should be terminated by a declaratory judgment to the effect that the parties will be bound by the decision of the Interstate Commerce Commission in respect of its determination of the construction, application and enforceability of the tariffs sought to be applied.

It is therefore

Adjudged and declared that the parties herein shall abide by the decision of the Interstate Commerce Commission which may be made in a case involving these parties and the tariffs sought to be applied herein (which case may in the future be filed by plaintiff with the Commission) respecting the construction, application and enforceability of the tariffs. Jurisdiction is accordingly retained for a possible motion for conventional relief in accordance with the decision of the Interstate Commerce Commission, if necessary to secure compliance with this judgment.